Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARISOL COLÓN APONTE<br><br>APELANTE<br><br>V.<br><br>CENTRO DE EDUCACIÓN MULTIDISCIPLINARIA, INC., H/N/C CEM COLLEGE Y OTROS<br><br>APELADO | TA2025AP00071 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: SJ2024CV02841<br><br>Sobre:<br>Ley Núm. 80 de 30 de mayo de1976 (Alegado Despido Injustificado) Ley Núm. 180 de 27 de julio de 1998 (Vacaciones y Días por Enfermedad) |

Panel integrado por su presidenta, la Jueza Grana Martínez y la Jueza Díaz Rivera y la Jueza Lotti Rodríguez

Grana Martínez, Jueza Presidenta

## SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2025.

La apelante, señora Marisol Colón Aponte, solicita que revoquemos la Sentencia en la que el Tribunal de Primera Instancia desestimó la demanda por despido injustificado y el pago de vacaciones. Por su parte, el apelado, Centro de Educación Multidisciplinaria Inc. (CEM), presentó su oposición al recurso. Con el beneficio de las posturas de ambas partes, resolvemos.

**I**

Los hechos esenciales para comprender la determinación que hoy tomamos son los siguientes. La apelante presentó una querella contra la apelada por despido injustificado y el pago de vacaciones acumuladas. La querella incluyó las alegaciones siguientes. La apelante comenzó a trabajar para la apelada el 1 de octubre de 1992. Fue despedida el 10 de

abril de 2023. Al momento de su despido era la Directora de Admisiones en el Recinto de Bayamón. Fue informada por escrito que su despido es debido al cierre de ese recinto. La apelada hizo dos nombramientos quince días antes de entregarle la carta de despido. La apelante cualificaba para ambos, pero la apelada no le hizo ningún ofrecimiento. La apelada violó el principio de antigüedad, porque nombró a dos personas que llevaban menos tiempo que la apelada en la empresa. Una de las personas nombradas es esposa del presidente. La ley 180 de 27 de julio de 1998 le da derecho a cobrar los días de vacaciones que tenía acumulados al momento de su despido.[1]

La apelada negó las alegaciones de la demanda. El CEM adujo que despidió a la apelante por justa causa. Según la apelada el despido obedeció al cierre total y permanente del Recinto de Bayamón. Además, alegó que el puesto ocupado por la apelante de Directora de Admisiones era de clasificación ocupacional única y estaba exento del pago de vacaciones acumuladas.[2]

Posteriormente, la apelada presentó una moción de sentencia sumaria basada particularmente en las admisiones que hizo la apelante durante su deposición. Su representación legal argumentó que no existía controversia de que: (1) el despido de la apelante fue justificado conforme al Artículo 3 de la Ley Núm. 80 de 30 de mayo de 1976, porque fue consecuencia del cierre total y permanente del recinto de Bayamón, donde trabaja como Directora de Admisiones, (2) el criterio de antigüedad no aplica, porque la apelante ocupaba un puesto de clasificación ocupacional única en el Recinto de Bayamón y la Ley Núm. 80, *supra,* no permite el desplazamiento de otros empleados que ocupen clasificaciones ocupacionales distintas, (3) el CEM nunca tuvo la práctica de trasladar a los directores de admisiones de un recinto a otro, (4) los directores de

---

[1] Véase Sistema Unificado de Manejo y Administración de Casos (SUMAC), entrada número 1 ante el TPI.
[2] Véase SUMAC, entrada número 8 ante el TPI.

admisiones no estaban bajo la supervisión directa común en la administración diaria del personal, (5) la apelante no tenía derecho a cobrar los días acumulados de vacaciones conforme al Artículo 6 de la Ley Núm.180 *supra*, porque ocupaba el puesto de Directora de Admisiones.[3]

La apelante se opuso a la moción de sentencia sumaria por entender que existía controversia de hechos esenciales. Ambas partes presentaron otros escritos en apoyo a sus respectivas posiciones.

El TPI coincidió con la apelada en que no existía controversia sobre los hechos relevantes y esenciales del caso. No obstante, decidió que la apelante descansó en las alegaciones de la querella, en conjeturas y argumentos que no estaban sustentados y en alegaciones irrelevantes. El foro apelado determinó que no existía controversia sobre los hechos siguientes. La apelante comenzó a trabajar en el CEM el 1 de octubre de 1992 como Oficial de Admisiones. Posteriormente, ocupó distintos puestos. La apelante ocupó el puesto de Directora de Admisiones del Recinto de Bayamón del CEM desde el 17 de junio de 2013 hasta el 10 de abril de 2023. La señora María Feliciano era su supervisora mientras ocupó ese puesto. Durante los tres años previos al despido su salario más alto fue de $1,901.56 mensuales. Además, recibía $500.00 mensuales para gastos de automóvil. Sus funciones como Directora de Admisiones del Recinto de Bayamón eran: (1) la dirección de la Oficina de Admisiones del CEM del Recinto de Bayamón, (2) dirigir, evaluar y supervisar la ejecución de un grupo de cuatro oficiales de admisiones y una recepcionista, (3) hacer cumplir las políticas y reglas del CEM en la Oficina de Admisiones, (4) la planificación, organización y cumplimiento de las metas establecidas sobre el número de matrícula, (5) crear y establecer y coordinar un plan de trabajo para la Oficina de Admisiones, (6) organizar, dirigir, planificar y coordinar las actividades y procesos de

---

[3] Id, entrada número 23 ante el TPI.

reclutamiento de estudiantes, (7) llevar a la consideración de la Directora de la Unidad Académica las recomendaciones que estimara necesarias para el mejoramiento de los servicios ofrecidos en la Oficina de Administraciones y cualquier situación que ameritara su intervención, (8) planificar y coordinar vistas a escuelas superiores para orientación y promoción de los programas académicos del CEM, (9) planificar y coordinar actividades para generar *leads* tales como exhibiciones en centros comerciales, ferias estudiantiles, festivales y otras similares, (9) preparar y someter a la Directora de la Unidad Académica todos los informes requeridos, (10) asistir y participar en reuniones con personal de la institución para atender situaciones relacionadas con la Oficina de Admisiones, (11) recomendar la contratación, suspensión, despido o cualquier acción disciplinaria de los empleados bajo su supervisión que estimara necesarias consultándolas con la Directora de Recursos Humanos y o la Directora de la Unidad Académica entre otras funciones.[4]

Otros hechos que constan en la sentencia apelada son los siguientes. La apelante conocía que su puesto estaba exento de la ley de salario mínimo, porque tenía una maestría en recursos humanos. El patrono le proveyó copia del Manual del Empleado durante todos los años que trabajó para el CEM. El 14 de diciembre de 2021, recibió copia de la versión revisada del manual efectivo para noviembre de 2021. La apelada otorgaba a sus empleados el beneficio de una cantidad de días para su disfrute. Según consta en el manual (1) la Ley Núm. 180 no contempla que el personal exento acumule licencia de vacaciones, (2) los días otorgados no se liquidan al terminar la relación de empleo y (3) los empleados exentos de la Ley Núm. 180 no tienen derecho a la liquidación del balance de días de vacaciones cuando culmina la relación de empleo. El CEM nunca tuvo la práctica de transferir a los directores de

---

[4] Véase Sentencia en SUMAC, determinaciones de hecho 6 a 12, entrada número 49 ante el TPI.

admisiones entre los distintos recintos. Cada recinto tenía su propio director de Admisiones que se reportaba directamente al director del Recinto.[5]

El foro primario también determinó los hechos a continuación. Al 4 de febrero de 2019, la apelante tenía conocimiento de que había cien estudiantes en el Recinto de Bayamón, porque su supervisora se lo comunicó. Su supervisora también le comunicó que todos los recintos se quedarían sin trabajo, sin no aumentaba la matrícula. El 13 de junio de 2019, el apelado notificó a la apelante que reduciría un día la jornada de trabajo, debido a la merma de matrícula. El 23 de marzo de 2022 el apelado sometió el formulario titulado *Institutional Teach out Plan Aprroval Form* con la agencia acreditadora *Accrediting Commission of Career Schools and College* indicando que cesaría operaciones el 29 de abril de 2022, debido a la merma significativa de matrícula en el Recinto de Mayagüez. Al 23 de marzo de 2022 ese recinto tenía únicamente 67 estudiantes, 45 en el curso de *Veterinary Assistant*, 12 en el curso de *Nursing*, 8 en *Nursing Sciences* y 2 en *Pharmacy Technician*. El Recinto de Mayagüez cerró operaciones el 29 de abril de 2022, por la merma de matrícula. Al presente permanece cerrado.[6]

La sentencia, además, incluye los hechos siguientes. El Recinto de Bayamón también estaba sufriendo una severa merma de matrícula que ponía en riesgo la continuidad de sus operaciones. Durante el período del 2021 al 2024 tenía una matrícula de 675 estudiantes y ofrecía bachillerato en ciencias de enfermería, programas asociados en ciencias de enfermería, técnico de farmacia, y emergencias médicas y programas técnicos de enfermería práctica y asistente de veterinario. La apelante conocía la merma de estudiantes en el Recinto de Bayamón, porque le dijeron que necesitaban aumentar la matrícula. Los registros de la

---

[5] Véase Sentencia en SUMAC, determinaciones de hecho 13 a 18, entrada número 49 ante el TPI.

[6] Véase Sentencia en SUMAC, determinaciones de hecho 19 a 23, entrada número 49 ante el TPI

apelada evidencian que para septiembre de 2019 a febrero de 2023 se reflejó una merma en la matricula. Durante el período de; (1) septiembre de 2019 a junio de 2020, eran 213 estudiantes, (2) de septiembre 2020 a junio de 2021 eran 147 estudiantes, (3) de septiembre de 2021 a junio de 2022 eran 97 estudiantes y, (4) 57 para el período de septiembre de 2022 a febrero 2023. La apelada cerró el recinto de Bayamón, debido a la merma significativa de matrícula. El 31 de marzo de 2023 sometió el formulario titulado *Institutional Teach out Plan Aprroval Form* con la agencia acreditadora ACCSCC indicando que cesaría operaciones el 28 de abril de 2023. Al 31 de marzo de 2023 el Recinto de Bayamón solamente contaba con 64 estudiantes, 30 en el curso de asistente de veterinaria, 4 en enfermería, 3 en enfermería práctica, 3 en ciencias de la enfermería, 12 en emergencias médicas y 12 en aseo profesional de mascotas.[7]

Por último, el TPI determinó los hechos siguientes. El 10 de abril de 2023 los empleados del recinto de Bayamón fueron informados del cierre de ese recinto. La apelante recibió una carta en esa fecha, donde fue informada que el recinto cerró debido a la reducción de matrícula y que sería cesanteada inmediatamente de su puesto como Directora de Admisiones del Recinto de Bayamón. Su despido fue efectivo el 10 de abril de 2023. Los demás empleados de la Oficina de Admisiones recibieron una carta similar, en la se les informó que el recinto iba a cerrar operaciones, debido la merma de matrícula y que, por ende, quedaban desempleados. Las señoras Jarinnete Rodríguez Fuentes, consejera profesional, y Aracelis Collazo Ortiz, secretaria de la directora, permanecieron ejecutando gestiones ministeriales sobre los detalles finales del cierre. No obstante, fueron cesanteadas efectivo el 24 de enero de 2024. La apelante sabía que el recinto de Bayamón cerró y que hasta el día de su deposición permanecía cerrado. Esta presentó una

---

[7] Véase Sentencia en SUMAC, determinaciones de hecho 24 a 28, entrada número 49 ante el TPI

reclamación de desempleo en la que indicó que fue despedida, porque cerraron en el Recinto de Bayamón. La apelante declaró que su demanda por despido injustificado estaba basada en el incumplimiento del criterio de antigüedad y que llevaba trabajando 30 años en el CEM y la apelada pudo ubicarla en otro puesto. Además, alegó que, aproximadamente, 15 días antes de su despido el patrono hizo unos nombramientos a otros puestos a los cuales ella cualificaba. Según la apelante, el patrono no le ofreció ninguno de los puestos y nombró a Lillian Delgado como Coordinadora de la División de Educación Continua y Desarrollo Profesional y a Carlos Robles como Oficial de Retención. El puesto de la demandante como Directora de Admisiones era totalmente diferente al de Lillian Delgado como Coordinadora de División de Educación Continua y Desarrollo Profesional en el Recinto Metropolitano y al de Carlos Robles como Oficial de Retenciones Institucionales en el Recinto Metropolitano.[8]

El foro apelado concluyó que la apelante era una empleada exenta de la aplicación de la Ley Núm. 180, *supra*, y conforme a las definiciones establecidas en el reglamento conocido como Reglamento Número 13 – Quinta Revisión (2005). Según el TPI, la apelante reconoció ese hecho. Al tribunal le quedó claro que la apelante estaba exenta porque: (1) recibía un salario mensual de $1,901.56, más $500.00 mensuales de gastos de auto, (2) su salario era de $2,401.56 mensuales o un equivalente a $600.00 semanales y (3) el CEM era una institución de educación secundaria u otro tipo de institución educativa. Según el TPI, la demandante era una ejecutiva, porque: (1) trabajaba como Directora de Admisiones del Recinto de Bayamón desde el 2013 hasta su último día de trabajo el 10 de abril de 2023, (2) estaba a cargo de la dirección de la Oficina de Admisiones, (3) dirigía, evaluaba y supervisaba la ejecución de un grupo de cuatro oficiales de admisiones y una recepcionista, (4) hacia cumplir las políticas y reglas de la apelada en la oficina de admisiones,

---

[8] Véase Sentencia en SUMAC, determinaciones de hecho 29 a 40, entrada número 49 ante el TPI

(5) planificaba organizaba, y daba cumplimiento a las metas establecidas sobre el número de matrícula, (6) creaba, establecía y coordinaba un plan de trabajo para la Oficina de Admisiones, (7) organizaba, dirigía, planificaba y coordinaba las actividades y procesos de reclutamiento de estudiantes, (8) llevaba a la consideración de la Directora de la Unidad Académica las recomendaciones que estimaba necesarias para el mejoramiento de los servicios de la Oficina de Admisiones, y por cualquier situación que ameritara la intervención de esa oficina, (9) planificaba y coordinaba visitar escuelas superiores para promover y orientar sobre los programas académicos del CEM, (10), planificaba y coordinaba actividades para generar *leads* como exhibiciones en centros comerciales, ferias estudiantiles, festivales y otras similares, (11) preparaba y sometía a la Directora de la Unidad Académica todos los informes requeridos, (12) asistía y participaba en reuniones con personal de la institución para atender situaciones relacionadas con la Oficina de Admisiones, (13) recomendaba la contratación, suspensión, despido o cualquier acción disciplinaria de los empleados bajo su supervisión y las consultaba con la Directora de Recursos Humanos yo Directora de la Unidad Académica entre otra funciones. Concluyó que las funciones que realizaba la apelante confirman que era la jefa del Departamento de Admisiones del Recinto de Bayamón.

Así el TPI determinó que la apelante cambió su teoría, porque estaba consciente de que ostentaba un puesto exento de la Ley Núm.180 *supra*. No dio credibilidad a las alegaciones de que el CEM tenía el uso y costumbre de liquidar las vacaciones, porque la apelante no presentó evidencia para sustentarlas. El foro primario concluyó que la única evidencia en autos demostró que el apelado concedía 24 días al año de vacaciones a sus empleados, pero no las liquidaba al momento de cesar la relación de empleo. El tribunal advirtió que a la apelante se le entregó copia del Manual del Empleado vigente al 2021 en el que constaba que la

Ley Núm. 180, *supra*, no aplicaba al personal exento. El TPI quedó convencido de que el CEM otorgaba a sus empleados el beneficio de una cantidad de días para su disfrute, pero no los liquidaba al terminar la relación de empleo. Igualmente, se convenció de que la apelante sabía que no tenía derecho al pago de las vacaciones. Por consiguiente, el TPI desestimó con perjuicio el reclamo por el pago de las vacaciones acumuladas.

Además, el TPI concluyó que la apelada tenía una causa justa para despedir a la apelante. Según el TPI, la Ley Núm. 80, *supra*, justifica el despido por el cierre total de operaciones. El TPI, explicó que el cierre total se refiere al local donde trabajaba el empleado despedido, si es que el patrono tiene más de una dependencia. El foro primario advirtió que la Ley Núm. 80, *supra,* obliga al patrono a retener con preferencia a los empleados de más antigüedad, dentro de su clasificación ocupacional. No obstante, hizo hincapié en que tienen que existir vacantes o que los puestos estén ocupados por empleados de menor antigüedad. Fue enfático en que los puestos tienen que existir dentro del establecimiento físico impactado por la reducción de personal.

El foro apelado concluyó que el patrono probó que cerró el recinto de Bayamón de forma total y permanente por la reducción de matrícula desde el año 2019 que se agravó con el tiempo. El TPI no aplicó el principio de antigüedad, porque el recinto donde trabajaba la apelante cerró de forma permanente y el puesto de Directora de Admisiones era de clasificación ocupacional única. Según el TPI, la apelante admitió que: (1) el apelado no tenía la práctica de transferir a los Directores de Admisiones entre los otros recintos, (2) cada director trabajaba en su respectivo recinto, (3) el despido ocurrió porque el CEM cerró de forma total y permanente el recinto de Bayamón y, (4) los Directores de Admisiones no estaban bajo la supervisión directa común.

El TPI concluyó que la permanencia de otros recintos no significaba que el cierre del recinto de Bayamón fue parcial. El tribunal sostuvo que la interpretación de la demandante de un cierre parcial daba al traste con el lenguaje claro del Artículo 2 de la Ley Núm. 95 del 30 de julio de 2007. Según el TPI, el legislador clarificó que, cuando el patrono tiene varias dependencias, el término establecimiento se refiere individualmente a la oficina, fábrica, sucursal o planta en la que ocurrió el cierre total. Fue enfático en que el cierre total y permanente del local donde labora el empleado despedido constituye justa causa para su despido, aunque el patrono otros establecimientos abiertos. Según el foro recurrido la justa causa aplica independientemente de que el patrono continue operando con otros establecimientos. El TPI, además, advirtió que el criterio de antigüedad solamente aplica dentro de ese establecimiento específico, salvo que aplique la excepción a la norma y eso no ocurrió en este caso. Por último, el tribunal concluyó que la apelante fue temeraria.

El 12 de mayo de 2025 el TPI dictó la sentencia sumaria en la que desestimó con perjuicio la totalidad de la querella y ordenó a la apelante pagar $5,000.00 de honorarios por temeridad. Posteriormente, denegó la solicitud de la apelante de determinaciones de hechos adicionales y o reconsideración.

Inconforme, la apelante presentó este recurso en el que alega que:

ERRO EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO DARLE EL CUMPLIMIENTO A LO DISPUESTO POR LA REGLA 36.3 (d) DE PROCEDIMIENTO CIVIL.

ERRO EL HONORABLE TRIBUNAL DEPRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA A BASE DE HECHOS QUE NO SON ESENCIALES NI PERTINENTES A LA CAUSA DE ACCION Y A PESAR DE EXISTIR UNA CONTROVERSIA SUSTANCIAL SOBRE HECHOS ESENCIALES Y PERTINENTES.

ERRO EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA POSICION QUE OCUPABA LA APELANTE ERA UN PUESTO DE CLASIFICACION OCUPACIONAL UNICA.

ERRO EL HONORABLE TRIBUNAL DEPRIMERA INSTANCIA AL DETERMINAR QUE LA PARTE APELANTE FUE TEMERARIA E

IMPONERLE HONORARIOS DE ABOGADO A FAVOR DEL PATRONO.

**II**

SENTENCIA SUMARIA

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. *Soto y otros v. Sky Caterers*, 2025 TSPR 3; 215 DPR ___ (2025). No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja de que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *BPPR v. Zorilla y otros*, 214 DPR 329, 338 (2024); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, según lo dispuesto en la Regla 36.2, 32 LPRA Ap. V. La Regla 36 contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe

presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando, (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Consejo Tit. V. Rocca Dev. Corp. Et als.*, 2025 TSPR 6, 215 DPR ___ (2025); *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

El Tribunal Supremo de Puerto Rico ha resuelto que el uso de la sentencia sumaria no es aconsejable en casos complejos en los que no existe controversia sobre elementos subjetivos, de intención, propósitos mentales, negligencia o credibilidad. *Soto y otros v. Sky Caterers, supra.* No obstante, eso no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención, como en los casos de discrimen, cuando de los documentos a ser considerados surge que no existe controversia de hechos materiales. Id.

Las declaraciones juradas en apoyo y en contra de la declaración jurada tienen que estar basada en el conocimiento personal del declarante. Una declaración jurada que solo contiene conclusiones, sin hechos específicos que las apoyen no tiene valor probatorio. La declaración jurada suficiente para sostener o controvertir una moción de sentencia sumaria tiene que contener hechos específicos. Los tribunales no pueden considerar ni atribuir valor probatorio a una declaración jurada que no está basada en el conocimiento personal del declarante. *Roldán Flores v. M. Cuebas et al,* 199 DPR 664, 677-679 (2018).

El TPI no está obligado a hacer determinaciones de hecho cuando ha entendido que no existe controversia sobre ningún hecho esencial y solo resta aplicar el derecho. La Regla 36.4 *supra* únicamente obliga al

tribunal a establecer los hechos probados, cuando; (1) no se dicta sentencia sumaria sobre la totalidad del caso, (2) no se concede todo el remedio solicitado y, (3) se deniega la moción de sentencia sumaria. *Pérez Vargas y Office Depot,* 203 DPR 687, 697-698 (2019).

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra,* y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Consejo Tit. v. Rocca Dev. Corp. et als*, supra; *Soto y otros v. Sky Caterers,* supra; *Cruz, López v. Casa Bella y otros,* supra; pág. 924, *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de novo, si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

### LA LEY NÚM. 80 DE 30 DE MAYO DE 1976, SEGÚN ENMENDADA

El despido de los empleados no está prohibido en nuestro ordenamiento jurídico. La Ley Número 80, *supra,* protege de una forma más efectiva el derecho de los obreros a la tenencia de su empleo y otorga remedios más justicieros y consubstánciales con los daños caudados por un despido injustificado. El propósito de esta legislación es proteger el derecho de los trabajadores ante las acciones arbitrarias y caprichosas el patrono. El despido injustificado conlleva el pago de mesada. La Número 80, *supra,* contempla varios escenarios o circunstancias que liberan al patrono de responsabilidad. Algunas de estas circunstancias están basadas en conducta atribuible al empleado y otras responden al curso decisorio de la gerencia empresarial.

Al patrono se le atribuye el cierre y la reorganización o reducción en la producción ventas o ganancias. Los incisos d, e y f del Artículo 2 de la Ley Número 80, *supra,* 29 LPRA sec.185b (d), (e) y, (f) incluyen circunstancias que afectan el buen y normal funcionamiento de una empresa y por lo tanto justifican el despido. El inciso (d) contempla el despido por el cierre total, temporero o parcial de las operaciones del establecimiento. El legislador reconoció que existen circunstancias que ameritan el despido, porque están relacionadas con la administración diaria de un negocio y que ocurren por razones económicas. No, obstante, no son justa causa, el mero capricho o el despido sin una razón relacionada con el buen y normal funcionamiento del establecimiento. Los patronos no tienen que pagar mesada, cuando se enfrentan a alguna de circunstancias que constituyen justa causa para el despido.

Sin embargo, conforme al Artículo 3, 29 LPRA sección 185c están obligados a retener con preferencia al empleado con más antigüedad, condicionado a que subsistan puestos vacantes u ocupados por empleados de menos antigüedad dentro de su clasificación ocupacional y

no en una distinta. No obstante, cuando tienen varias oficinas, fábricas, sucursales o plantas en Puerto Rico, los criterios del Artículo 3, supra, aplican únicamente dentro del establecimiento físico impactado por la reducción de personal. Sin embargo, esta regla puede obviarse para comparar a los empleados de los establecimientos integrados cuando; (1) las clasificaciones ocupacionales afectadas usual y frecuentemente se trasladaban de un establecimiento a otro y (2) estaban bajo supervisión directa común en la administración diaria del personal. La participación de beneficios y aplicación de normas y reglas comunes no será pertinente para la aplicación del método de selección establecido en este artículo. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 770- 772 (2022); *Segarra Rivera v. Int'l Sipping et al,* 208 DPR 964, 982-985 (2022); Artículo 3-A, 29 LPRA 185c1. El cierre total y permanente de un establecimiento, exime al patrono de la obligación de cumplir con las disposiciones de la Ley Núm. 80, *supra,* porque al cerrar no retiene ni reemplea a trabajador alguno. *Roldán Flores v. M Cuebas et al.,* supra, pág. 680.

<u>LEY 402 DE 12 DE MAYO DE 1950, 32 LPRA SEC. 3113 *ET SEQ.*, LEY QUE REGULA LA CONCESIÓN DE HONORARIOS DE ABOGADO EN LOS CASOS DE RECLAMACIONES DE TRABAJADORES O EMPLEADOS CONTRA SUS PATRONOS</u>

Mediante esta legislación, el legislador prohibió expresamente la imposición de honorarios de abogado por temeridad, a los obreros que presentan una reclamación judicial contra su patrono al amparo de las leyes laborales. El trabajador o empleado querellante fue expresamente exonerado del pago de honorarios, en caso de que el patrono querellado resulte victorioso. Artículo 2 de la Ley Núm. 402, 32 LPRA sección 3115.

**III**

La apelante alega en el primer señalamiento de error que existe controversia de hechos esenciales que impiden la adjudicación sumaria. Su representación legal aduce en el segundo señalamiento de error que el cierre de un solo recinto es un cierre parcial y en el tercero alega que

la apelante no ocupaba un puesto de clasificación única. La apelante sostiene que la apelada trasladaba empleados a otros recintos, porque lo hizo con Lillian Delgado y Carlos Robles. Según la apelante, su puesto estaba dentro de la misma clasificación ocupacional que el de Lillian Delgado como Coordinadora de la División de Educación Continua y Desarrollo Profesional en el Recinto Metropolitano y el de Carlos Robles como Oficial de Retención en el Registro Metropolitano. Su representación legal arguye que el patrono creó ambas plazas, dos semanas ante de despedir a la apelante. Sin embargo, no le hizo ningún ofrecimiento, a pesar de que tenía mayor antigüedad que las personas que nombró en los puestos. La apelante enfatizó que no solicitaba ser transferida como Directora de Admisiones a otro recinto. Su representación reclama el derecho de la apelante a ser nombrada en uno de los puestos creados dos semanas antes del cierre del recinto de Bayamón.

Por su parte, la apelada alega que despidió a la apelante por una justa causa y que no estaba obligado a trasladarla a otro recinto. Su representación legal sostiene que la apelante interpreta erróneamente los hechos y el significado de clasificación ocupacional. El CEM argumenta que la propia apelante admitió que su puesto como Directora de Admisiones, era el único en el Recinto de Bayamón y que sus funciones eran totalmente diferentes a los puestos de la señora Delgado y el señor Robles.

Los primeros tres señalamientos de error serán discutidos conjuntamente, porque están íntimamente relacionados. La controversia se reduce a determinar si existe evidencia suficiente para concluir sumariamente que el despido de la apelante no fue injustificado, porque el patrono tenía justa causa para terminar la relación laboral y no estaba obligado a reubicarla en otro empleo.

La apelante no tiene razón. El TPI concluyó correctamente como un hecho incontrovertido que el patrono tenía justa causa para el despido. Ambas partes reconocen que el despido obedeció al cierre permanente del recinto de Bayamón ocasionado por la merma de matrícula. La apelante admitió que; (1) fue despedida debido al cierre del recinto de Bayamón,[9] y que, (2) estaba consciente de que el recinto cerró y que permanecía cerrado.[10] Además, podemos concluir que conocía que la matrícula estaba mermando, porque admitió que el patrono; (1) le pidió aumentar la matrícula, (2) redujo un día laboral debido a la merma y, (3) le advirtió que la reducción de matrícula podía ocasionar el cierre del recinto.[11] Además, existe constancia de que el patrono le informó por escrito que fue despedida, debido al cierre del recinto.[12]

Como cuestión de Derecho estamos obligados a concluir que el despido fue justificado, porque fue ocasionado por el cierre total y permanente del recinto donde trabajaba la apelante. No obstante, la apelante alega que el cierre fue parcial, porque otros recintos continuaron abiertos y que el patrono debió reubicarla en uno de los puestos en los que nombró a otros empleados de menor antigüedad y en su misma clasificación ocupacional. Su representación legal hace una interpretación acomodaticia e incorrecta de la ley. El cierre del recinto de Bayamón constituye un cierre total y permanente y no parcial como alega la apelante. La representación legal de la apelante olvida que el legislador dispuso que los criterios del Artículo 3 de la Ley Núm. 80, *supra*, aplican únicamente al establecimiento físico impactado. La apelante no podía ser reubicada en el establecimiento impactado, porque el recinto de Bayamón cerró completa y permanentemente y todos sus empleados fueron cesanteados. Por consiguiente, no quedaba ningún puesto existente en el que pudiera ser reubicada.

---

[9] Véase página 66 de la Deposición.
[10] Id, página17 a 18 de la Deposición.
[11] Id, páginas 55, 58 a 59 de la Deposición.
[12] Exhibit V de la Moción de Sentencia Sumaria.

Tampoco aplican las excepciones que obligan al patrono a reubicar a un empleado en otro recinto. La propia apelante reconoció que; (1) la clasificación ocupacional afectada no se trasladaba usual y frecuentemente de un establecimiento a otro y, (2) que no estaba bajo supervisión directa común en la administración diaria. La apelante admitió que; (1) su única supervisora era la directora del Recinto de Bayamón,[13] (2) cada recinto tenía su propio director de admisiones,[14] (3) cada director de Admisiones se reportaba al director del recinto,[15] (4) el CEM no tenía la práctica de intercambiar directores de admisiones de un recinto para otro, ni nada por el estilo y cada director se quedaba trabajando en su recinto y, (5) su carta de nombramiento fue para el recinto de Bayamón.[16]

Por otro lado, no es correcto que el patrono reubicó a empleados de menor antigüedad en otros recintos y en puestos a los que la apelante cualificaba. Su representación legal se equivoca, porque las personas nombradas en esos puestos no estaban en la misma clasificación ocupacional que la apelante. La apelante declaró que la apelada nombró a Lilian Delgado como coordinadora de la División de Educación Continua y Desarrollo Profesional y a Carlos Robles como Oficial de Detención en el Recinto Metropolitano. Sin embargo, admitió que el puesto de Directora de Admisiones era totalmente diferente y que desconocía el salario de esos puestos.[17]

Por último, la apelante cuestiona la imposición de honorarios de temeridad. La apelante tiene razón. El TPI erró al ordenar a la apelante el pago de honorarios, debido a que el legislador eximió expresamente a los obreros del pago de honorarios por temeridad, cuando instan una acción contra su patrono al amparo de las leyes laborales.

---

[13] Véase página 30 de la Deposición.
[14] Id.
[15] Página 31 de la Deposición.
[16] Páginas 31 a 33 de la Deposición.
[17] Véase páginas 72 y 73 de la Deposición.

Las admisiones de la apelante y la demás prueba presentada nos dejan más que claro que no existe controversia alguna de que su despido fue justificado. No obstante, es necesario corregir el error de derecho que cometió el TPI al imponer a la apelante el pago de honorarios por temeridad.

## IV

Por lo antes expuesto, se modifica la sentencia apelada para dejar sin efecto el pago de honorarios de temeridad y así modificada, se confirma.

Lo acordó el Tribunal, y lo certifica la secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones